## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **DESTENY ALEXANDER and DAMARIS MAYORGA, individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br>**-against-**<br><br>**MHF MGMT II LLC, MHF MGMT LLC, MHF SURF LLC, MHF RALPH LLC, MHF 86 LLC, MHF 79 LLC, MHF 5TH AVE LLC, MHF PITKIN LLC, MHF MONTICELLO LLC, MHF CHESTER LLC, MHF NEW WINDSOR LLC, MHF CATSKILL LLC, MHF ELLENVILLE LLC, ASHISH PARIKH, AMISH PARIKH, SACHIN SHAH, and SHASHIN PARIKH,**<br><br>**Defendants.** | **No. 25 Civ. 3161**<br><br>**CLASS ACTION COMPLAINT** |

Desteny Alexander and Damaris Mayorga ("Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves, and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

1.      This action arises out of MHF Mgmt II LLC[1], MHF Mgmt LLC, MHF Surf LLC, MHF Ralph LLC, MHF 86 LLC, MHF 79 LLC, MHF 5th Ave LLC, MHF Pitkin LLC, MHF Monticello LLC, MHF Chester LLC, MHF New Windsor LLC, MHF Catskill LLC, and MHF Ellenville LLC ("collectively, the "Corporate Defendants"), Ashish Parikh, Amish Parikh, Sachin Shah, and Shashin Parikh (the "Individual Defendants") (together with the Corporate Defendants,

---

[1] MHF Mgmt II LLC operates 13 Taco Bell locations in New York City and 11 others in New York State, for a total of 24 Taco Bell locations in New York.

"Defendants") failure to comply with the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), the New York Labor Law, Article 6, §§ 190 *et seq*. ("NYLL"), and the New York City Fair Workweek Law, Title 20, Chapter 12 of the New York City Administrative Code ("Fair Workweek Law").

2.      This lawsuit seeks to recover damages for Plaintiffs and similarly situated non-exempt hourly fast food positions (collectively, "Fast Food Workers") who work or have worked for Defendants in New York.

3.      Defendants failed to pay Plaintiffs and Fast Food Workers minimum wages, agreed upon wages, and overtime wages. In this regard, at times, Plaintiffs and Fast Food Workers were unable to take meal breaks due to the volume of in-store work. Despite this, Defendants would apply an automatic 30-minute meal break to Plaintiffs' and Fast Food Workers' shifts, resulting in time shaved from their hours worked.

4.      Defendants also failed to pay Plaintiffs and Fast Food Workers for uniform maintenance pay, spread-of-hours pay and call-in pay.

5.      Defendants failed to provide Plaintiffs and similarly situated Fast Food Workers with an accurate statement of wages pursuant to NYLL § 195(3), as the paystubs provided failed to notate Plaintiffs' and similarly situated Fast Food Workers' correct number of hours they worked and pay they should have received.

6.      Plaintiffs relied on their paystubs to ensure that Defendants paid them correctly and for all hours worked.

7.      Due to Defendants' failure to provide the correct number of hours worked and pay they should have received on the wage statements provided to Plaintiffs and similarly situated Fast Food Workers, Plaintiffs and similarly situated Fast Food Workers were misinformed about the

correct number of hours worked, and thus the correct amount of wages they were entitled to receive.

8.      Defendants' incorrect wage statements allowed Defendants to continue their unlawful wage and hour scheme without Plaintiffs' or similarly situated Fast Food Workers' awareness that they were being underpaid.

9.      Upon information and belief, Defendants similarly failed to provide Plaintiffs and all other similarly situated Fast Food Workers with any time of hire notices pursuant to NYLL § 195(1).

10.     Fast Food Workers rely on their wage notices to ensure that employers have paid them the correctly for the hours they worked.

11.     Due to Defendants' failure to provide Plaintiffs and Fast Food Workers' with notices reflecting their rates of pay, Plaintiffs and Fast Food Workers were un-informed about the correct wages they were supposed earned, and thus they were deprived of the information necessary for reviewing their wages, which was a direct cause for their economic injury, and in fact, resulted in their wages being underpaid.

12.     Defendants' failure to provide any wage notices allowed Defendants to continue their unlawful wage and hour scheme without Plaintiffs' and Fast Food Workers' awareness that they were being underpaid.

13.     Had Plaintiffs and Fast Food Workers been able to see that they were not being lawfully paid via their wage notices and wage statements, they would have been able to avoid underpayment of their wages. *See Guthrie v. Rainbow Fencing LLC*, 113 F.4th 300, 308 (2d Cir. 2024) (plaintiff establishes concrete harm if plaintiff can show she "would have avoided some actual harm or obtained some actual benefit if accurate [statements] had been provided"); *see also*

*Van Duser v. Tozzer Ltd.*, No. 23 Civ. 9329 (AS), 2024 WL 4635495, at *5 (S.D.N.Y. Oct. 31, 2024).

14.    Plaintiffs' inability to crosscheck their wage notices and wage statements constitutes concrete harm.

15.    Accordingly, Plaintiffs and Fast Food Workers are entitled to statutory penalties of fifty dollars for each workday that Defendants failed to provide accurate wage statements, up to a total of five thousand dollars each pursuant to NYLL § 195(1).

16.    Furthermore, Plaintiffs and Fast Food Workers are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide accurate wage statements, up to a total of five thousand dollars each pursuant to NYLL § 195(3).

17.    This lawsuit also seeks to recover unpaid schedule change premiums and other damages for Plaintiffs and Fast Food Workers who work or have worked for Defendants in New York City.

18.    New York City passed the Fair Workweek Law to require fast food employers to provide their employees with predictable schedules with advance notice, sufficient time between shifts, and pathways to full-time employment.

19.    Defendants have violated the Fair Workweek Law by failing to provide predictable schedules with at least 14-days' notice, changing employees' schedules at the last minute, requiring employees to work clopenings without written consent and without paying the premium and by terminating employees without providing proper notice. *See* N.Y.C. Admin. Code §§ 20-1221-22, 20-1231; 20-1241.

20.    Plaintiffs bring this action on behalf of themselves and all similarly situated current and former Fast Food Workers pursuant who elect to opt-in to this action pursuant to the FLSA,

29 U.S.C. §§ 201 *et seq*., and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived Plaintiffs and other similarly situated employees of their lawfully earned wages.

21.    Plaintiffs also bring this action on behalf of themselves and all other similarly situated Fast Food Workers in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the NYLL.

22.    Plaintiffs also bring this action on behalf of themselves and all other similarly situated Fast Food Workers in New York City pursuant to Rule 23 to remedy violations of the Fair Workweek Law.

## THE PARTIES

**Plaintiffs**

**Desteny Alexander**

23.    Desteny Alexander ("Alexander") is an adult individual who is a resident of the State of New York.

24.    Alexander was employed by Defendants as a fast food worker from in or around September 2023 until February 3, 2024 in Queens, New York.

25.    Alexander is a covered employee within the meaning of the FLSA, the NYLL, and the Fair Workweek Law.

26.    A written consent form for Alexander is being filed with this Class Action Complaint.

**Damaris Mayorga**

27.    Damaris Mayorga ("Mayorga") is an adult individual who is a resident of the State of New York.

28.    Mayorga was employed by Defendants as a fast food worker from in or around May

2022 until June 7, 2024 in Queens, New York.

29.    Mayorga is a covered employee within the meaning of the FLSA, the NYLL, and the Fair Workweek Law.

**Defendants**

30.    Defendants have employed and/or jointly employed Plaintiffs and similarly situated employees at all times relevant.

31.    Each Defendant has had a substantial control over Plaintiffs' and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

32.    Defendants are part of a single integrated enterprise that has jointly employed Plaintiffs and similarly situated employees at all times relevant.

33.    During all relevant times, Defendants' operations have been interrelated and unified.

34.    During all relevant times, Defendants have shared a common upper management and have been centrally controlled and or owned by the Individual Defendants.

35.    During all relevant times, Defendants have centrally controlled the labor relations at the Taco Bell fast food restaurants owned by Defendants.

**MHF Mgmt II LLC**

36.    MHF Mgmt II LLC is a foreign business corporation organized and existing under the laws of New Jersey.

37.    MHF Mgmt II LLC's principal executive office is located at 301 Rt. 17, Suite 802, East Rutherford, New Jersey 07070.

38.    Taco Bell's Franchise Disclosure Document filed March 26, 2025 identifies MHF Mgmt II LLC as the operator of the location Plaintiff Alexander worked at.

39.     MHF Mgmt II LLC was and is a covered employer within the meaning of the NYLL, the FLSA, and the Fair Workweek Law, and at all times relevant, employed Plaintiffs and similarly situated employees.

40.     MHF Mgmt II LLC is a "fast food establishment" under the Fair Workweek Law because it is a limited-service establishment that is part of a chain with 30 or more establishments nationally, where patrons order or select food and drink items and pay before eating. N.Y.C. Admin. Code § 20-1201.

41.     MHF Mgmt II LLC has maintained control, oversight, and direction over Plaintiffs and Fast Food Workers, including timekeeping, payroll, and other employment practices that applied to them.

42.     MHF Mgmt II LLC applies the same employment policies, practices, and procedures to all Fast Food Workers in its operation, including policies, practices, and procedures with respect to scheduling.

43.     MHF Mgmt II LLCLLC has had an annual gross volume of sales in excess of $500,000.

44.     At all times relevant, MHF Mgmt II LLC has employed more than two employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

**45.**     In this regard, employees for MHF Mgmt II LLCLLC regularly handled goods in interstate commerce, including, but not limited to, Pepsi-Cola products, food ingredients from Tyson Foods, Taylor Farms, Haas and Misson, among other suppliers, paper towels, cleaning products, and other supplies produced outside the State of New York.[2]

---

[2] *See* Taco Bell, Ingredients, https://www.tacobell.com/faqs/nutrition/ingredients.

**MHF Mgmt LLC**

46.     MHF Mgmt LLC is a foreign business corporation organized and existing under the laws of New Jersey.

47.     MHF Mgmt LLC's principal executive office is located at 301 Rt. 17, Suite 802, East Rutherford, New Jersey 07070.

48.     MHF Mgmt LLC is named as a "Principal" on the active New York State Liquor License for Defendant's Taco Bell location at 1047 Surf Ave, Brooklyn, New York 11224.

49.     MHF Mgmt LLC was and is a covered employer within the meaning of the NYLL, the FLSA, and the Fair Workweek Law, and at all times relevant, employed Plaintiffs and similarly situated employees.

50.     MHF Mgmt LLC is a "fast food establishment" under the Fair Workweek Law because it is a limited-service establishment that is part of a chain with 30 or more establishments nationally, where patrons order or select food and drink items and pay before eating. N.Y.C. Admin. Code § 20-1201.

51.     MHF Mgmt LLC has maintained control, oversight, and direction over Plaintiffs and Fast Food Workers, including timekeeping, payroll, and other employment practices that applied to them.

52.     MHF Mgmt LLC applies the same employment policies, practices, and procedures to all Fast Food Workers in its operation, including policies, practices, and procedures with respect to scheduling.

53.     MHF Mgmt LLC has had an annual gross volume of sales in excess of $500,000.

54.     At all times relevant, MHF Mgmt LLC has employed more than two employees and its employees utilize goods, equipment, and/or materials that have moved in interstate

commerce.

55.    In this regard, employees for MHF Mgmt LLC regularly handled goods in interstate commerce, including, but not limited to, Pepsi-Cola products, food ingredients from Tyson Foods, Taylor Farms, Haas and Misson, among other suppliers, paper towels, cleaning products, and other supplies produced outside the State of New York.[3]

**MHF Surf LLC**

56.    MHF Surf LLC is a domestic business corporation organized and existing under the laws of New York.

57.    MHF Surf LLC's principal executive office is located at 301 Rt. 17, Suite 802, East Rutherford, New Jersey 07070.

58.    MHF Surf LLC is listed as the "Premise Name," on the active New York State Liquor License for the premises doing business as "Taco Bell" located at 1047 Surf Ave, Brooklyn, New York 11224.

59.    MHF Surf LLC was and is a covered employer within the meaning of the NYLL, the FLSA, and the Fair Workweek Law, and at all times relevant, employed Plaintiffs and similarly situated employees.

60.    MHF Surf LLC is a "fast food establishment" under the Fair Workweek Law because it is a limited-service establishment that is part of a chain with 30 or more establishments nationally, where patrons order or select food and drink items and pay before eating. N.Y.C. Admin. Code § 20-1201.

61.    MHF Surf LLC has maintained control, oversight, and direction over Plaintiffs and Fast Food Workers, including timekeeping, payroll, and other employment practices that applied

---

[3] *See* Taco Bell, Ingredients, https://www.tacobell.com/faqs/nutrition/ingredients.

to them.

62.    MHF Surf LLC applies the same employment policies, practices, and procedures to all Fast Food Workers in its operation, including policies, practices, and procedures with respect to scheduling.

63.    MHF Surf LLC has had an annual gross volume of sales in excess of $500,000.

64.    At all times relevant, MHF Surf LLC has employed more than two employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

65.    In this regard, employees for MHF Surf LLC regularly handled goods in interstate commerce, including, but not limited to, Pepsi-Cola products, food ingredients from Tyson Foods, Taylor Farms, Haas and Misson, among other suppliers, paper towels, cleaning products, and other supplies produced outside the State of New York.[4]

**MHF Ralph LLC**

66.    MHF Ralph LLC is a domestic business corporation organized and existing under the laws of New York.

67.    MHF Ralph LLC's principal executive office is located at 301 Rt. 17, Suite 802, East Rutherford, New Jersey 07070.

68.    MHF Ralph LLC was and is a covered employer within the meaning of the NYLL, the FLSA, the Fair Workweek Law, and at all times relevant, employed Plaintiffs and similarly situated employees.

69.    MHF Ralph LLC is a "fast food establishment" under the Fair Workweek Law because it is a limited-service establishment that is part of a chain with 30 or more establishments nationally, where patrons order or select food and drink items and pay before eating. N.Y.C.

---

[4] *See* Taco Bell, Ingredients, https://www.tacobell.com/faqs/nutrition/ingredients.

Admin. Code § 20-1201.

70.     MHF Ralph LLC has maintained control, oversight, and direction over Plaintiffs and Fast Food Workers, including timekeeping, payroll, and other employment practices that applied to them.

71.     MHF Ralph LLC applies the same employment policies, practices, and procedures to all Fast Food Workers in its operation, including policies, practices, and procedures with respect to scheduling.

72.     MHF Ralph LLC has had an annual gross volume of sales in excess of $500,000.

73.     At all times relevant, MHF Ralph LLC has employed more than two employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

74.     In this regard, employees for MHF Ralph LLC regularly handled goods in interstate commerce, including, but not limited to, Pepsi-Cola products, food ingredients from Tyson Foods, Taylor Farms, Haas and Misson, among other suppliers, paper towels, cleaning products, and other supplies produced outside the State of New York.[5]

**MHF 86 LLC**

75.     MHF 86 LLC is a domestic business corporation organized and existing under the laws of New York.

76.     MHF 86 LLC's principal executive office is located at 301 Rt. 17, Suite 802, East Rutherford, New Jersey 07070.

77.     MHF 86 LLC was and is a covered employer within the meaning of the NYLL, the FLSA, and the Fair Workweek Law, and at all times relevant, employed Plaintiffs and similarly

---

[5] *See* Taco Bell, Ingredients, https://www.tacobell.com/faqs/nutrition/ingredients.

situated employees.

78.     MHF 86 LLC is a "fast food establishment" under the Fair Workweek Law because it is a limited-service establishment that is part of a chain with 30 or more establishments nationally, where patrons order or select food and drink items and pay before eating. N.Y.C. Admin. Code § 20-1201.

79.     MHF 86 LLC has maintained control, oversight, and direction over Plaintiffs and Fast Food Workers, including timekeeping, payroll, and other employment practices that applied to them.

80.     MHF 86 LLC applies the same employment policies, practices, and procedures to all Fast Food Workers in its operation, including policies, practices, and procedures with respect to scheduling.

81.     MHF 86 LLC has had an annual gross volume of sales in excess of $500,000.

82.     At all times relevant, MHF 86 LLC has employed more than two employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

83.     In this regard, employees for MHF 86 LLC regularly handled goods in interstate commerce, including, but not limited to, Pepsi-Cola products, food ingredients from Tyson Foods, Taylor Farms, Haas and Misson, among other suppliers, paper towels, cleaning products, and other supplies produced outside the State of New York.[6]

**MHF 79 LLC**

84.     MHF 79 LLC is a domestic business corporation organized and existing under the laws of New York.

85.     MHF 79 LLC's principal executive office is located at 301 Rt. 17, Suite 802, East

---

[6] *See* Taco Bell, Ingredients, https://www.tacobell.com/faqs/nutrition/ingredients.

Rutherford, New Jersey 07070.

86.    MHF 79 LLC was and is a covered employer within the meaning of the NYLL, the FLSA, and the Fair Workweek Law, and at all times relevant, employed Plaintiffs and similarly situated employees.

87.    MHF 79 LLC is a "fast food establishment" under the Fair Workweek Law because it is a limited-service establishment that is part of a chain with 30 or more establishments nationally, where patrons order or select food and drink items and pay before eating. N.Y.C. Admin. Code § 20-1201.

88.    MHF 79 LLC has maintained control, oversight, and direction over Plaintiffs and Fast Food Workers, including timekeeping, payroll, and other employment practices that applied to them.

89.    MHF 79 LLC applies the same employment policies, practices, and procedures to all Fast Food Workers in its operation, including policies, practices, and procedures with respect to scheduling.

90.    MHF 79 LLC has had an annual gross volume of sales in excess of $500,000.

91.    At all times relevant, MHF 79 LLC has employed more than two employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

**92.**    In this regard, employees for MHF 79 LLC regularly handled goods in interstate commerce, including, but not limited to, Pepsi-Cola products, food ingredients from Tyson Foods, Taylor Farms, Haas and Misson, among other suppliers, paper towels, cleaning products, and other supplies produced outside the State of New York.[7]

**MHF 5th Ave LLC**

---

[7] *See* Taco Bell, Ingredients, https://www.tacobell.com/faqs/nutrition/ingredients.

93.    MHF 5th Ave LLC is a domestic business corporation organized and existing under the laws of New York.

94.    MHF 5th Ave LLC's principal executive office is located at 301 Rt. 17, Suite 802, East Rutherford, New Jersey 07070.

95.    MHF 5th Ave LLC was and is a covered employer within the meaning of the NYLL, the FLSA, and the Fair Workweek Law, and at all times relevant, employed Plaintiffs and similarly situated employees.

96.    MHF 5th Ave LLC is a "fast food establishment" under the Fair Workweek Law because it is a limited-service establishment that is part of a chain with 30 or more establishments nationally, where patrons order or select food and drink items and pay before eating. N.Y.C. Admin. Code § 20-1201.

97.    MHF 5th Ave LLC has maintained control, oversight, and direction over Plaintiffs and Fast Food Workers, including timekeeping, payroll, and other employment practices that applied to them.

98.    MHF 5th Ave LLC applies the same employment policies, practices, and procedures to all Fast Food Workers in its operation, including policies, practices, and procedures with respect to scheduling.

99.    MHF 5th Ave LLC has had an annual gross volume of sales in excess of $500,000.

100.    At all times relevant, MHF 5th Ave LLC has employed more than two employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

101.    In this regard, employees for MHF 5th Ave LLC regularly handled goods in interstate commerce, including, but not limited to, Pepsi-Cola products, food ingredients from

Tyson Foods, Taylor Farms, Haas and Misson, among other suppliers, paper towels, cleaning products, and other supplies produced outside the State of New York.[8]

**MHF Pitkin LLC**

102.    MHF Pitkin LLC is a domestic business corporation organized and existing under the laws of New York.

103.    MHF Pitkin LLC's principal executive office is located at 301 Rt. 17, Suite 802, East Rutherford, New Jersey 07070.

104.    MHF Pitkin LLC was and is a covered employer within the meaning of the NYLL, the FLSA, and the Fair Workweek Law, and at all times relevant, employed Plaintiffs and similarly situated employees.

105.    MHF Pitkin LLC is a "fast food establishment" under the Fair Workweek Law because it is a limited-service establishment that is part of a chain with 30 or more establishments nationally, where patrons order or select food and drink items and pay before eating. N.Y.C. Admin. Code § 20-1201.

106.    MHF Pitkin LLC has maintained control, oversight, and direction over Plaintiffs and Fast Food Workers, including timekeeping, payroll, and other employment practices that applied to them.

107.    MHF Pitkin LLC applies the same employment policies, practices, and procedures to all Fast Food Workers in its operation, including policies, practices, and procedures with respect to scheduling.

108.    MHF Pitkin LLC has had an annual gross volume of sales in excess of $500,000.

109.    At all times relevant, MHF Pitkin LLC has employed more than two employees

---

[8] *See* Taco Bell, Ingredients, https://www.tacobell.com/faqs/nutrition/ingredients.

and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

110.    In this regard, employees for MHF Pitkin LLC regularly handled goods in interstate commerce, including, but not limited to, Pepsi-Cola products, food ingredients from Tyson Foods, Taylor Farms, Haas and Misson, among other suppliers, paper towels, cleaning products, and other supplies produced outside the State of New York.[9]

**MHF Monticello LLC**

111.    MHF Monticello LLC is a domestic business corporation organized and existing under the laws of New York.

112.    MHF Monticello LLC's principal executive office is located at 301 Rt. 17, Suite 802, East Rutherford, New Jersey 07070.

113.    MHF Monticello LLC was and is a covered employer within the meaning of the NYLL, the FLSA, and the Fair Workweek Law, and at all times relevant, employed Plaintiffs and similarly situated employees.

114.    MHF Monticello LLC is a "fast food establishment" under the Fair Workweek Law because it is a limited-service establishment that is part of a chain with 30 or more establishments nationally, where patrons order or select food and drink items and pay before eating. N.Y.C. Admin. Code § 20-1201.

115.    MHF Monticello LLC has maintained control, oversight, and direction over Plaintiffs and Fast Food Workers, including timekeeping, payroll, and other employment practices that applied to them.

116.    MHF Monticello LLC applies the same employment policies, practices, and

---

[9] *See* Taco Bell, Ingredients, https://www.tacobell.com/faqs/nutrition/ingredients.

procedures to all Fast Food Workers in its operation, including policies, practices, and procedures with respect to scheduling.

117.    MHF Monticello LLC has had an annual gross volume of sales in excess of $500,000.

118.    At all times relevant, MHF Monticello LLC has employed more than two employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

119.    In this regard, employees for MHF Monticello LLC regularly handled goods in interstate commerce, including, but not limited to, Pepsi-Cola products, food ingredients from Tyson Foods, Taylor Farms, Haas and Misson, among other suppliers, paper towels, cleaning products, and other supplies produced outside the State of New York.[10]

**MHF Chester LLC**

120.    MHF Chester LLC is a domestic business corporation organized and existing under the laws of New York.

121.    MHF Chester LLC's principal executive office is located at 301 Rt. 17, Suite 802, East Rutherford, New Jersey 07070.

122.    MHF Chester LLC was and is a covered employer within the meaning of the NYLL, the FLSA, and the Fair Workweek Law, and at all times relevant, employed Plaintiffs and similarly situated employees.

123.    MHF Chester LLC is a "fast food establishment" under the Fair Workweek Law because it is a limited-service establishment that is part of a chain with 30 or more establishments nationally, where patrons order or select food and drink items and pay before eating. N.Y.C.

---

[10] *See* Taco Bell, Ingredients, https://www.tacobell.com/faqs/nutrition/ingredients.

Admin. Code § 20-1201.

124.    MHF Chester LLC has maintained control, oversight, and direction over Plaintiffs and Fast Food Workers, including timekeeping, payroll, and other employment practices that applied to them.

125.    MHF Chester LLC applies the same employment policies, practices, and procedures to all Fast Food Workers in its operation, including policies, practices, and procedures with respect to scheduling.

126.    MHF Chester LLC has had an annual gross volume of sales in excess of $500,000.

127.    At all times relevant, MHF Chester LLC has employed more than two employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

128.    In this regard, employees for MHF Chester LLC regularly handled goods in interstate commerce, including, but not limited to, Pepsi-Cola products, food ingredients from Tyson Foods, Taylor Farms, Haas and Misson, among other suppliers, paper towels, cleaning products, and other supplies produced outside the State of New York.[11]

**MHF New Windsor LLC**

129.    MHF New Windsor LLC is a domestic business corporation organized and existing under the laws of New York.

130.    MHF New Windsor LLC's principal executive office is located at 301 Rt. 17, Suite 802, East Rutherford, New Jersey 07070.

131.    MHF New Windsor LLC was and is a covered employer within the meaning of the NYLL, the FLSA, and the Fair Workweek Law, and at all times relevant, employed Plaintiffs and

---

[11] *See* Taco Bell, Ingredients, https://www.tacobell.com/faqs/nutrition/ingredients.

similarly situated employees.

132.    MHF New Windsor LLC is a "fast food establishment" under the Fair Workweek Law because it is a limited-service establishment that is part of a chain with 30 or more establishments nationally, where patrons order or select food and drink items and pay before eating. N.Y.C. Admin. Code § 20-1201.

133.    MHF New Windsor LLC has maintained control, oversight, and direction over Plaintiffs and Fast Food Workers, including timekeeping, payroll, and other employment practices that applied to them.

134.    MHF New Windsor LLC applies the same employment policies, practices, and procedures to all Fast Food Workers in its operation, including policies, practices, and procedures with respect to scheduling.

135.    MHF New Windsor LLC has had an annual gross volume of sales in excess of $500,000.

136.    At all times relevant, MHF New Windsor LLC has employed more than two employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

**137.**    In this regard, employees for MHF New Windsor LLC regularly handled goods in interstate commerce, including, but not limited to, Pepsi-Cola products, food ingredients from Tyson Foods, Taylor Farms, Haas and Misson, among other suppliers, paper towels, cleaning products, and other supplies produced outside the State of New York.[12]

**MHF Catskill LLC**

138.    MHF Catskill LLC is a domestic business corporation organized and existing under

---

[12] *See* Taco Bell, Ingredients, https://www.tacobell.com/faqs/nutrition/ingredients.

the laws of New York.

139.    MHF Catskill LLC's principal executive office is located at 301 Rt. 17, Suite 802, East Rutherford, New Jersey 07070.

140.    MHF Catskill LLC was and is a covered employer within the meaning of the NYLL, and the FLSA, Fair Workweek Law, and at all times relevant, employed Plaintiffs and similarly situated employees.

141.    MHF Catskill LLC is a "fast food establishment" under the Fair Workweek Law because it is a limited-service establishment that is part of a chain with 30 or more establishments nationally, where patrons order or select food and drink items and pay before eating. N.Y.C. Admin. Code § 20-1201.

142.    MHF Catskill LLC has maintained control, oversight, and direction over Plaintiffs and Fast Food Workers, including timekeeping, payroll, and other employment practices that applied to them.

143.    MHF Catskill LLC applies the same employment policies, practices, and procedures to all Fast Food Workers in its operation, including policies, practices, and procedures with respect to scheduling.

144.    MHF Catskill LLC has had an annual gross volume of sales in excess of $500,000.

145.    At all times relevant, MHF Catskill LLC has employed more than two employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

146.    In this regard, employees for MHF Catskill LLC regularly handled goods in interstate commerce, including, but not limited to, Pepsi-Cola products, food ingredients from Tyson Foods, Taylor Farms, Haas and Misson, among other suppliers, paper towels, cleaning

products, and other supplies produced outside the State of New York.[13]

**MHF Ellenville LLC**

147.    MHF Ellenville LLC is a domestic business corporation organized and existing under the laws of New York.

148.    MHF Ellenville LLC's principal executive office is located at 301 Rt. 17, Suite 802, East Rutherford, New Jersey 07070.

149.    MHF Ellenville LLC was and is a covered employer within the meaning of the NYLL, and the FLSA, and the Fair Workweek Law, and at all times relevant, employed Plaintiffs and similarly situated employees.

150.    MHF Ellenville LLC is a "fast food establishment" under the Fair Workweek Law because it is a limited-service establishment that is part of a chain with 30 or more establishments nationally, where patrons order or select food and drink items and pay before eating. N.Y.C. Admin. Code § 20-1201.

151.    MHF Ellenville LLC has maintained control, oversight, and direction over Plaintiffs and Fast Food Workers, including timekeeping, payroll, and other employment practices that applied to them.

152.    MHF Ellenville LLC applies the same employment policies, practices, and procedures to all Fast Food Workers in its operation, including policies, practices, and procedures with respect to scheduling.

153.    MHF Ellenville LLC has had an annual gross volume of sales in excess of $500,000.

154.    At all times relevant, MHF Ellenville LLC has employed more than two employees

---

[13] *See* Taco Bell, Ingredients, https://www.tacobell.com/faqs/nutrition/ingredients.

and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

155.    In this regard, employees for MHF Ellenville LLC regularly handled goods in interstate commerce, including, but not limited to, Pepsi-Cola products, food ingredients from Tyson Foods, Taylor Farms, Haas and Misson, among other suppliers, paper towels, cleaning products, and other supplies produced outside the State of New York.[14]

**Ashish Parikh**

156.    Ashish Parikh is a resident of the State of New Jersey.

157.    At all relevant times, Ashish Parikh has been the owner and operator of the Corporate Defendants.

158.    The Division of Corporations filing with the New York State Department of State identifies Ashish Parikh as person authorized to accept personal service on behalf of MHF Mgmt II LLC, MHF Surf LLC, MHF Ralph LLC, MHF 86 LLC, MHF 79 LLC, MHF 5th Ave LLC, MHF Pitkin LLC, MHF Monticello LLC, MHF Chester LLC, MHF New Windsor LLC, MHF Catskill LLC, and MHF Ellenville LLC.

159.    The Division of Revenue and Enterprise Services filing with the New Jersey Department of Treasury identifies Ashish Parikh as a "Member/Manager" of MHF Mgmt II LLC.

160.    A Division of Revenue and Enterprise Services filing with the New Jersey Department of Treasury signed by Ashish Parikh dated May 21, 2019, attests that he is "authorized to sign" the Certificate of Amendment of Formation on behalf of MHF Mgmt, LLC.

161.    Ashish Parikh is listed as a "Principal," on the active New York State Liquor License for the premises doing business as "Taco Bell" located at 1047 Surf Ave, Brooklyn, New

---

[14] *See* Taco Bell, Ingredients, https://www.tacobell.com/faqs/nutrition/ingredients.

York 11224.

162.    At all relevant times, Ashish Parikh has had power over personnel decisions at Defendants' Taco Bell locations, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

163.    At all relevant times, Ashish Parikh has had power over payroll decisions at Defendants' Taco Bell locations, including the power to retain time and/or wage records.

164.    At all relevant times, Ashish Parikh has been actively involved in managing the day-to-day operations of Defendants' Taco Bell locations.

165.    At all relevant times, Ashish Parikh has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees.

166.    At all relevant times, Ashish Parikh has had the power to transfer the assets and/or liabilities of the Corporate Defendants.

167.    At all relevant times, Ashish Parikh has had the power to declare bankruptcy on behalf of the Corporate Defendants.

168.    At all relevant times, Ashish Parikh has had the power to enter into contracts on behalf of the Corporate Defendants.

169.    At all relevant times, Ashish Parikh has had the power to close, shut down, and/or sell Defendant's Taco Bell locations.

170.    Ashish Parikh is a covered employer within the meaning of the FLSA, the NYLL, and the Fair Workweek Law, and at all relevant times, has employed and/or jointly employed Plaintiffs and similarly situated employees.

**Amish Parikh**

171.    Amish Parikh is a resident of the State of New Jersey.

172.    At all relevant times, Amish Parikh has been the owner and operator of the Corporate Defendants.

173.    The Division of Revenue and Enterprise Services filing with the New Jersey Department of Treasury identifies Amish Parikh as a "Member/Manager" of MHF Mgmt II LLC.

174.    Amish Parikh is listed as a "Principal," on the active New York State Liquor License for the premises doing business as "Taco Bell" located at 1047 Surf Ave, Brooklyn, New York 11224.

175.    At all relevant times, Amish Parikh has had power over personnel decisions at Defendants' Taco Bell locations, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

176.    At all relevant times, Amish Parikh has had power over payroll decisions at Defendants' Taco Bell locations, including the power to retain time and/or wage records.

177.    At all relevant times, Amish Parikh has been actively involved in managing the day-to-day operations of Defendants' Taco Bell locations.

178.    At all relevant times, Amish Parikh has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees.

179.    At all relevant times, Amish Parikh has had the power to transfer the assets and/or liabilities of the Corporate Defendants.

180.    At all relevant times, Amish Parikh has had the power to declare bankruptcy on behalf of the Corporate Defendants.

181.    At all relevant times, Amish Parikh has had the power to enter into contracts on behalf of the Corporate Defendants.

182.    At all relevant times, Amish Parikh has had the power to close, shut down, and/or

sell Defendant's Taco Bell locations.

183.    Amish Parikh is a covered employer within the meaning of the FLSA, the NYLL, and the Fair Workweek Law, and at all relevant times, has employed and/or jointly employed Plaintiffs and similarly situated employees.

**Sachin Shah**

184.    Sachin Shah is a resident of the State of New Jersey.

185.    At all relevant times, Sachin Shah has been the owner and operator of the Corporate Defendants.

186.    The Division of Revenue and Enterprise Services filing with the New Jersey Department of Treasury identifies Sachin Shah as a "Member/Manager" of MHF Mgmt II LLC.

187.    Sachin Shah is listed as a "Principal," on the active New York State Liquor License for the premises doing business as "Taco Bell" located at 1047 Surf Ave, Brooklyn, New York 11224.

188.    At all relevant times, Sachin Shah has had power over personnel decisions at Defendants' Taco Bell locations, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

189.    At all relevant times, Sachin Shah has had power over payroll decisions at Defendants' Taco Bell locations, including the power to retain time and/or wage records.

190.    At all relevant times, Sachin Shah has been actively involved in managing the day-to-day operations of Defendants' Taco Bell locations.

191.    At all relevant times, Sachin Shah has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees.

192.    At all relevant times, Sachin Shah has had the power to transfer the assets and/or

liabilities of the Corporate Defendants.

193.    At all relevant times, Sachin Shah has had the power to declare bankruptcy on behalf of the Corporate Defendants.

194.    At all relevant times, Sachin Shah has had the power to enter into contracts on behalf of the Corporate Defendants. In this regard, Sachin Shah signed a lease assumption on behalf of MHF Mgmt II LLC in 2021.

195.    At all relevant times, Sachin Shah has had the power to close, shut down, and/or sell Defendant's Taco Bell locations.

196.    Sachin Shah is a covered employer within the meaning of the FLSA, the NYLL, and the Fair Workweek Law, and at all relevant times, has employed and/or jointly employed Plaintiffs and similarly situated employees.

**Shashin Parikh**

197.    Shashin Parikh is a resident of the State of New Jersey.

198.    At all relevant times, Shashin Parikh has been the owner and operator of the Corporate Defendants.

199.    The Division of Revenue and Enterprise Services filing with the New Jersey Department of Treasury identifies Shashin Parikh as a "Member/Manager" of MHF Mgmt II LLC.

200.    Shashin Parikh is listed as a "Principal," on the active New York State Liquor License for the premises doing business as "Taco Bell" located at 1047 Surf Ave, Brooklyn, New York 11224.

201.    At all relevant times, Shashin Parikh has had power over personnel decisions at Defendants' Taco Bell locations, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

202.    At all relevant times, Shashin Parikh has had power over payroll decisions at Defendants' Taco Bell locations, including the power to retain time and/or wage records.

203.    At all relevant times, Shashin Parikh has been actively involved in managing the day-to-day operations of Defendants' Taco Bell locations.

204.    At all relevant times, Shashin Parikh has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees.

205.    At all relevant times, Shashin Parikh has had the power to transfer the assets and/or liabilities of the Corporate Defendants.

206.    At all relevant times, Shashin Parikh has had the power to declare bankruptcy on behalf of the Corporate Defendants.

207.    At all relevant times, Shashin Parikh has had the power to enter into contracts on behalf of the Corporate Defendants.

208.    At all relevant times, Shashin Parikh has had the power to close, shut down, and/or sell Defendant's Taco Bell locations.

209.    Shashin Parikh is a covered employer within the meaning of the FLSA, the NYLL, and the Fair Workweek Law, and at all relevant times, has employed and/or jointly employed Plaintiffs and similarly situated employees.

## JURISDICTION AND VENUE

210.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and jurisdiction over Plaintiffs' state and city law claims pursuant to 28 U.S.C. § 1367.

211.    This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

212.    This Court also has original jurisdiction pursuant to the Class Action Fairness Act

of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d), because the amount in controversy against the Defendants in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs, and Plaintiffs and the members of the proposed class are citizens of states different from that of Defendants.

213.    There are over 100 members in the proposed class.

214.    Defendants are subject to personal jurisdiction in New York.

215.    Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants conduct business in this District.

## COLLECTIVE ACTION ALLEGATIONS

216.    Plaintiffs bring the First and Second Causes of Action, FLSA claims, on behalf of themselves and all similarly-situated persons who work or have worked as Fast Food Workers for Defendants who elect to opt-in to this action (the "FLSA Collective").

217.    Defendants are liable under the FLSA for, inter alia, failing to properly compensate Plaintiffs and the FLSA Collective.

218.    Consistent with Defendants' policies and patterns or practices, Plaintiffs and the FLSA Collective were not paid the proper premium overtime compensation of 1.5 times their regular rates of pay for all hours worked beyond 40 per workweek.

219.    All of the work that Plaintiffs and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and the FLSA Collective have performed.

220.    As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to

Plaintiffs and the FLSA Collective. This policy and pattern or practice includes, but is not limited to, willfully failing to pay their employees, including Plaintiffs and the FLSA Collective, any overtime wages for all hours worked in excess of 40 hours per workweek.

## NEW YORK CLASS ACTION ALLEGATIONS

221.    Plaintiffs bring the Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Causes of Action, New York Labor Law claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of:

> All persons who work or have worked as Fast Food Workers for MHF Mgmt II LLC, MHF Mgmt LLC, MHF Surf LLC, MHF Ralph LLC, MHF 86 LLC, MHF 79 LLC, MHF 5th Ave LLC, MHF Pitkin LLC, MHF Monticello LLC, MHF Chester LLC, MHF New Windsor LLC, MHF Catskill LLC, and MHF Ellenville LLC in New York between June 26, 2017[15] and the date of final judgment in this matter (the "NYLL Class").

222.    Plaintiffs bring the Eleventh, Twelfth, Thirteenth, Fourteenth, Fifteenth, and Sixteenth Causes of Action, Fair Workweek claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of:

> All persons who work or have worked as Fast Food Workers for MHF Mgmt II LLC, MHF Mgmt LLC, MHF Surf LLC, MHF Ralph LLC, MHF 86 LLC, MHF 79 LLC, MHF 5th Ave LLC, MHF Pitkin LLC, MHF Monticello LLC, MHF Chester LLC, MHF New Windsor LLC, MHF Catskill LLC, and MHF Ellenville LLC in New York City between June 26, 2021[16] and the date of final judgment in this matter (the "FWWL Class").

223.    The members of each the NYLL Class and the FWWL Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

---

[15] The June 26, 2017 date is a result of a tolling agreement previously entered into by the Parties.
[16] The June 26, 2021 date is a result of a tolling agreement previously entered into by the Parties.

224. There are more than fifty members of each the NYLL Class and the FWWL Class.

225. Plaintiffs' claims are typical of those claims that could be alleged by any member of each the NYLL Class and the FWWL Class, and the relief sought is typical of the relief which would be sought by each member of each the NYLL Class and the FWWL Class in separate actions.

226. Plaintiffs and the members of each the NYLL Class and the FWWL Class have all been injured due to Defendant's common policies, practices, and patterns of conduct. Defendant's corporate-wide policies and practices affected everyone in each the NYLL Class and the FWWL Class similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each member of the NYLL Class and the FWWL Class

227. Plaintiffs are able to fairly and adequately protect the interests of each the NYLL Class and the FWWL Class and has no interests antagonistic to either the NYLL Class and the FWWL Class.

228. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

229. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

230. Common questions of law and fact exist as to the NYLL Class that predominate

over any questions only affecting Plaintiffs and/or each member of the NYLL Class individually and include, but are not limited to, the following:

(a) whether Defendants failed to pay Plaintiffs and the NYLL Class minimum wages for all of the hours they worked up to 40 hours per workweek;

(b) whether Defendants failed to pay Plaintiffs and the NYLL Class agreed upon wages for all of the hours they worked up to 40 hours per workweek;

(c) whether Defendants correctly compensated Plaintiffs and the NYLL Class at time and one half their regular rate of pay for all hours worked in excess of 40 per workweek;

(d) whether Defendants failed to compensate Plaintiffs and the NYLL Class with uniform maintenance pay;

(e) whether Defendants failed to compensate Plaintiffs and the NYLL Class with spread-of-hours pay;

(f) whether Defendants failed to compensate Plaintiffs and the NYLL Class with call in pay;

(g) whether Defendants failed to provide proper time of hire notices to Plaintiffs and the NYLL Class; and

(h) whether Defendants failed to provide accurate wage statements to Plaintiffs and the NYLL Class.

231. Common questions of law and fact exist as to the FWWL Class that predominate over any questions only affecting Plaintiffs and/or each member of the FWWL Class individually and include, but are not limited to, the following:

(a) whether Defendants failed to provide each employee with a written good faith estimate of the hours, dates, times, and locations of the employee's expected regular work schedule ("good faith estimate"); and whether Defendants reduced employees' hours worked by more than 15%, without just cause or a legitimate business reason, and without providing a written explanation. N.Y.C. Admin. Code § 20- 1221(a); N.Y.C. Admin. Code § 20- 1272.

(b) whether Defendants failed to provide each employee with a written work schedule at least 14 days before the first day of each schedule. N.Y.C. Admin. Code §§ 20-1201 and 20-1221(b)-(c); failed to post the schedule in the workplace and/or personally provide it to each employee, either electronically or on paper. N.Y.C. Admin. Code § 20-1221(c)(1); and/or failed to provide employees with the new versions of the schedule within 24 hours of making the change. *Id*. § 20-1221(c)(2).

(c) whether Defendants obtained written consent when requiring employees to work additional time. N.Y.C. Admin. Code § 20-1221(d); 6 R.C.N.Y. § 7-606(a).

(d) whether Defendants paid employees a schedule change premium ("premium pay") when they made a change of more than 15 minutes to an employee's schedule with less than 14 days' notice. N.Y.C. Admin. Code § 20-1222(a); 6 R.C.N.Y. § 7-606(b).

(e) whether Defendants both obtained written consent from employees for shifts spanning two calendar days and with less than 11 hours between the shifts ("clopening" shifts) and paid employees the required $100 premium for such shifts. N.Y.C. Admin. Code § 20-1231; 6 R.C.N.Y. § 7-601(a).

(f) whether Defendants gave part-time employees the opportunity to work more shifts before hiring new employees. N.Y.C. Admin. Code § 20-1241; N.Y.C. Admin. Code § 20- 1221(a).

(g) whether Defendants terminated or reduced the hours of employees without just cause and/or failed to provide written notice of termination or reduction of hours. N.Y.C. Admin. Code § 20-1272.

(h) whether Defendants maintained records that document their compliance with each of the above requirements of the Fair Workweek Law for three years. N.Y.C. Admin. Code § 20-1206(a); 6 R.C.N.Y. § 7- 609(a)

## **PLAINTIFFS' FACTUAL ALLEGATIONS**

232. Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiffs, individually, as follows:

**Desteny Alexander**

233.    Alexander was employed at Defendants' Taco Bell fast food establishment located in Queens, New York as an hourly fast food employee from approximately September 2023 until February 3, 2024.

234.    Throughout her employment, Alexander's scheduled varied, but she has generally worked the following hours: 4 to 5 days per week, for an average of 25 to 35 hours per week.

235.    Occasionally, Alexander worked over 40 hours per workweek.

236.    Defendants failed to pay Alexander for all hours worked each week (*i.e.* "time-shaving"). In this regard, even if Alexander did not take a meal break, Defendants would deduct a 30-minute meal break from each shift she worked.

237.    Defendant's meal deduction resulting in a minimum wage and/or agreed upon wage violation for hours worked below 40 per workweek, and an overtime violation for hours worked over 40 per workweek.

238.    Upon information and belief on or about December 3, 2023, there was a 30-minute break deduction applied to Alexander's hours, however, Alexander performed work during that time period.

239.    At her time of hire, Alexander was only given two uniforms despite regularly working four to five days per week. The uniform consisted of a t-shirt emblazoned with Defendants' logo.

240.    Per Defendants' written policy, Alexander was required to wear a "clean" uniform each shift.

241.    Due to the nature of the fast food industry, Alexander's uniform shirt would become dirty, odorous, and soiled after each shift, thus requiring daily washing.

242.    Defendants do not and did not offer to wash, iron, dry clean, repair, or perform other

maintenance necessary for Alexander's required uniform.

243.    Defendants did not provide Alexander with a sufficient number of uniforms consistent with the average number of days worked per week by Alexander.

244.    Thus, the uniform does not fall under the wash and wear exception in order for Defendants to avoid uniform maintenance pay, and as such, Alexander was entitled to uniform maintenance pay.

245.    Defendants fail to pay Alexander spread-of-hours pay for all occurrences in which the length of her workday, including working time and meal breaks, spanned greater than 10 hours, in violation of the NYLL.

246.    At times, Defendants sent Alexander home before the end of her shift, resulting in a shift worked shorter than 3 hours, but failed to pay her call-in pay as required by the NYLL.

247.    In this regard, upon information and belief, Alexander was scheduled to work 8 hours on December 31, 2023, but was sent home in less than 3 hours, and thus would be entitled to call in pay for this time (*i.e.*, the difference between 3 hours and the time worked).

248.    Upon information and belief, Defendants failed to furnish Alexander with any time of hire wage notice, as required by the NYLL.

249.    Moreover, Defendants failed to furnish Alexander with accurate statements of wages with each payment of wages as required by the NYLL. In this regard, the wage statements provided to Alexander failed to account for all of her hours worked and for other owed wages, such as spread-of-hours pay and call-in pay.

250.    Due to Defendants failure to provide Alexander's pay information and proper number of hours worked on Alexander's wage notices and wage statements, Alexander was misinformed and/or un-informed about her actual wages earned, and was thus deprived of the

information necessary to review her wages earned, which was a direct cause for her economic injury, and in fact, resulted in her wages being underpaid.

251.    When Defendants first hired Alexander, it did not provide her with a good faith estimate of the hours, dates, times, and locations of her expected regular schedule in violation of N.Y.C. Admin Code § 20-1221(a).

252.    Defendants regularly failed to provide Alexander with a written work schedule at least 14 days before the first day of each schedule in violation of N.Y.C. Admin. Code §§ 20-1201 and 20-1221(b)-(c).

253.    When Defendants added time to Alexander's work schedule with less than 14 days' advance notice – or no advance notice at all – it did not give Alexander an opportunity to decline to work the additional time in violation of N.Y.C. Admin. Code § 20-1221(d).

254.    During Alexander's employment, Defendants regularly changed Alexander's schedule at the last minute and failed to pay her schedule change premiums in violation of N.Y.C. Admin. Code § 20-1222(a); 6 R.C.N.Y. § 7-606(b).

255.    Upon information and belief, on or about November 24, 2023, Alexander was scheduled to work from 8:00 a.m. to 4:00 p.m., despite this, Alexander was sent home around 30 minutes early. Thus, for this change she would be owed a $75 premium for the reduction to her hours with less than 24 hours' notice.

256.    Defendants also failed to notify Alexander of the details of the available shifts, including whether the shifts were recurring and how to express interest in picking them up, before hiring new employees in violation of N.Y.C. Admin. Code § 20-1241.

257.    Further, or around February 2024, Defendants terminated Alexander without just cause and failed to provide any written explanation for the reduction, in violation of N.Y.C. Admin.

Code § 20-1221(a). In this regard, Alexander was alerted of her termination via the following text message:



**Damaris Mayorga**

258.    Mayorga has been employed at Defendants' Taco Bell fast food establishment located in Queens as an hourly fast food employee from approximately May 2022 until June 7, 2024.

259.    Throughout her employment, Mayorga's scheduled varied, but she has generally worked the following hours: 4 to 5 days per week, for an average of 32 to 40 hours per week.

260.    Occasionally, Mayorga worked over 40 hours per workweek.

261.    Defendants failed to pay Mayorga for all hours worked each week (*i.e.* "time-shaving"). In this regard, even if Mayorga did not take a meal break, Defendants would deduct a 30-minute meal break from each shift she worked.

262.    Defendant's meal deduction resulting in a minimum wage and/or agreed upon wage violation for hours worked below 40 per workweek, and an overtime violation for hours worked over 40 per workweek.

263.    At her time of hire, Mayorga was only given two uniforms despite regularly working four to five days per week. The uniform consisted of a t-shirt emblazoned with Defendants' logo.

264.    During the course of her employment, Mayorga was designated a shift lead and was

required to wear a shift lead shirt that differed from the shirts she already had. She was given only one shift lead shirt despite working 4 to 5 days per week.

265.    Per Defendants' written policy, Mayorga was required to wear a "clean" uniform each shift.

266.    Due to the nature of the fast food industry, Mayorga's uniform shirt would become dirty, odorous, and soiled after each shift, thus requiring daily washing.

267.    Defendants do not and did not offer to wash, iron, dry clean, repair, or perform other maintenance necessary for Mayorga's required uniform.

268.    Defendants did not provide Mayorga with a sufficient number of uniforms consistent with the average number of days worked per week by Mayorga.

269.    Thus, the uniform does not fall under the wash and wear exception in order for Defendants to avoid uniform maintenance pay, and as such, Mayorga was entitled to uniform maintenance pay.

270.    Defendants fail to pay Mayorga spread-of-hours pay for all occurrences in which the length of her workday, including working time and meal breaks, spanned greater than 10 hours, in violation of the NYLL.

271.    Upon information and belief, at times, Defendants sent Mayorga home before the end of her shift, resulting in a shift worked shorter than 3 hours, but failed to pay her call-in pay as required by the NYLL.

272.    Upon information and belief, Defendants failed to furnish Mayorga with any time of hire wage notice, as required by the NYLL.

273.    Moreover, Defendants failed to furnish Mayorga with accurate statements of wages with each payment of wages as required by the NYLL.

274.    Due to Defendants failure to provide Mayorga's pay information and proper number of hours worked on Mayorga's wage notices and wage statements, Mayorga was misinformed and/or un-informed about her actual wages earned, and was thus deprived of the information necessary to review her wages earned, which was a direct cause for her economic injury, and in fact, resulted in her wages being underpaid.

275.    When Defendants first hired Mayorga, it did not provide her with a good faith estimate of the hours, dates, times, and locations of her expected regular schedule in violation of N.Y.C. Admin Code § 20-1221(a).

276.    Defendants regularly failed to provide Mayorga with a written work schedule at least 14 days before the first day of each schedule in violation of N.Y.C. Admin. Code §§ 20-1201 and 20-1221(b)-(c).

277.    When Defendants added time to Mayorga's work schedule with less than 14 days' advance notice – or no advance notice at all – it did not give Mayorga an opportunity to decline to work the additional time in violation of N.Y.C. Admin. Code § 20-1221(d).

278.    During Mayorga's employment, Defendants regularly changed Mayorga's schedule at the last minute and failed to pay her schedule change premiums in violation of N.Y.C. Admin. Code § 20-1222(a); 6 R.C.N.Y. § 7-606(b).

279.    Upon information and belief, Defendants required Mayorga to work shifts spanning two calendar days and with less than 11 hours between the shifts ("clopening") without Mayorga's consent and without paying Mayorga $100 for each such shift worked. N.Y.C. Admin. Code § 20-1231; 6 R.C.N.Y. § 7-601(a).

280.    Defendants also failed to notify Mayorga of the details of the available shifts, including whether the shifts were recurring and how to express interest in picking them up, before

hiring new employees in violation of N.Y.C. Admin. Code § 20-1241.

281.    Further, or around June 2024, Defendants constructively discharged Mayorga without just cause as Defendants regularly changed her schedule and reduced her hours without her consent.

282.    Defendants failed to provide any written explanation for the reduction and changes, in violation of N.Y.C. Admin. Code § 20-1221(a).

### **FIRST CAUSE OF ACTION**
### **Fair Labor Standards Act – Minimum Wages**
### **(Brought on behalf of Plaintiffs and the FLSA Collective)**

283.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

284.    At all times relevant, Plaintiff and the FLSA Collective were, are, or have been employees, and Defendants were, are, or have been employers of Plaintiffs and the FLSA Collective, within the meaning of 29 U.S.C §§ 201 *et seq*.

285.    At all times relevant, Defendants have been employers of Plaintiffs and the FLSA Collective, engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq*.

286.    Defendants have failed to compensate Plaintiffs and the FLSA Collective for all hours worked at the applicable minimum wage rate. In this regard, at times, Defendants "shaved" Plaintiffs' and the FLSA Collective's time by implanting an automatic 30-minute break deduction even if Plaintiffs and the FLSA Collective did not take a break.

287.    As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied minimum wages in accordance with the FLSA, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, and

other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

## SECOND CAUSE OF ACTION
### Fair Labor Standards Act – Overtime Wages
### (Brought on behalf of Plaintiffs and the FLSA Collective)

288.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

289.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the FLSA Collective.

290.    Plaintiffs and the FLSA Collective worked in excess of 40 hours during workweeks in the relevant period.

291.    Defendants failed to pay Plaintiffs and the FLSA Collective the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times their regular rate of pay, for all hours worked in excess of 40 per workweek. In this regard, at times, Defendants "shaved" Plaintiffs' and the FLSA Collective's time by implanting an automatic 30-minute break deduction even if Plaintiffs and the FLSA Collective did not take a break.

292.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and the FLSA Collective have suffered damages by being denied proper overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

## THIRD CAUSE OF ACTION
### New York Labor Law – Minimum Wages
### (Brought on behalf of Plaintiffs and the NYLL Class)

293.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

294.    At all times relevant, Plaintiff and the NYLL Class have been employees of

Defendants, and Defendants have been employers of Plaintiff and the NYLL Class within the meaning of the NYLL §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations.

295.    Defendants failed to pay Plaintiffs and the NYLL Class for all hours worked up to and including 40 per workweek, at the minimum hourly wage to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations.  In this regard, at times, Defendants "shaved" Plaintiffs' and the NYLL Class's time by implanting an automatic 30-minute break deduction even if Plaintiffs and the Class did not take a break.

296.    Pursuant to the NYLL, Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, Defendants have been required to pay Plaintiff and the NY Class the full minimum wage at a rate of (a) $11.00 per hour on and after December 31, 2016; $13.00 per hour on and after December 31, 2017; $15.00 per hour on and after December 31, 2018; $16.00 per hour on and after December 31, 2024; and $16.50 per hour on and after January 1, 2025.

297.    Due to Defendants' violations of the NYLL, Plaintiffs and the NYLL Class are entitled to recover from Defendants their unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

**FOURTH CAUSE OF ACTION**
**New York Labor Law – Agreed Upon Wages**
**(Brought on behalf of Plaintiffs and the NYLL Class)**

298.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

299.    Pursuant to NYLL, Article 6 § 191(1)(d), Defendants have been required to pay Plaintiffs and the NYLL Class the wages they have earned in accordance with the agreed terms of

their employment.

300.    Defendants failed to pay Plaintiffs and the NYLL Class for all hours worked, at their agreed upon rate of pay.  In this regard, at times, Defendants "shaved" Plaintiffs' and the NYLL Class's time by implanting an automatic 30-minute break deduction even if Plaintiffs and the Class did not take a break.

301.    As a result of the common policies described above Defendants has violated the agreed upon wage provisions of the NYLL with respect to Plaintiffs and the NYLL Class by: failing to compensate Plaintiffs and the NYLL Class for all hours worked up to and including 40 at their agreed upon rate of pay.

302.    Due to Defendants' violations of the NYLL, Plaintiffs and the NYLL Class are entitled to recover from Defendants their agreed wages, liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

### FIFTH CAUSE OF ACTION
**New York Labor Law – Overtime Wages**
**(Brought on behalf of Plaintiffs and the NYLL Class)**

303.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

304.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and protect Plaintiffs and the NYLL Class.

305.    Defendants failed to pay Plaintiffs and the NYLL Class the premium overtime wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations – at a rate of 1.5 times their regular rate of pay, for all hours worked beyond 40 per workweek.

306.    In this regard, Defendants required Plaintiffs and the NYLL Class to perform work

without compensation. Specifically, at times, Defendants "shaved" Plaintiffs' and the NYLL Class's time by implanting an automatic 30-minute break deduction even if Plaintiffs and the Class did not take a break.

307.    Due to Defendants' violations of the NYLL, Plaintiffs and the NYLL Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

**SIXTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Uniform Maintenance Pay**
**(Brought on behalf of Plaintiffs and the NYLL Class)**

308.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

309.    Under the NYLL, a fast food employer must maintain required uniforms or pay the employee, in addition to the employee's agreed upon rate of pay, uniform maintenance pay at the weekly rate set forth below, based on the number of hours worked, where employees who work over 30 hours per week shall be paid the High rate, employees who work more than 20 hours but fewer than 30 hours shall be paid the Medium rate and employees who work 20 hours or fewer shall be paid the Low rate: $13.70 High, $10.80 Medium, $6.55 Low on and after December 31, 2016; $16.20 High, $12.80 Medium, $7.75 Low on and after December 31, 2017; $18.65 High, $14.75 Medium, $8.90 Low on and after December 31, 2018; $19.90 High, $15.75 Medium, $9.50 Low on and after January 1, 2024. 12 N.Y.C.R.R. §146-1.7(a).

310.    Defendants have required Plaintiffs and the NYLL Class to bear the costs of cleaning their required uniform shirts, and have not properly reimbursed Plaintiffs and the NYLL Class for the cost of cleaning the required uniforms.

311.    Defendants failed to provide a sufficient number of uniforms, and launder and/or maintain the required uniforms for Plaintiffs and the NYLL Class, and failed to pay them the required weekly amount in addition to their wages.

312.    Due to Defendants' violations of the NYLL, Plaintiffs and the NYLL Class are entitled to recover from Defendants unpaid uniform maintenance pay, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

### SEVENTH CAUSE OF ACTION
**New York Labor Law – Failure to Pay Call-In Pay**
**(Brought on behalf of Plaintiffs and the NYLL Class)**

313.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

314.    During regularly scheduled shifts, Plaintiffs and the NYLL Class who reported for duty, whether or not assigned to actual work, were permitted to leave by request or permission of Defendants, and were not compensated for: (1) at least three hours for one shift or the number of hours in the regularly scheduled shift, whichever is less; (2) at least six hours for two shifts totaling six hours or less, or the number of hours in the regularly scheduled shift, whichever is less; and (3) at least eight hours for three shifts totaling eight hours or less or the number of hours in the regularly scheduled shift, whichever is less, as required by 12 N.Y.C.R.R. Part 137 and Part 146.

315.    Due to Defendants' violations of the NYLL, Plaintiffs and the NYLL Class are entitled to recover from Defendants up to three hours of wages calculated at their regular or overtime rate of pay, whichever is applicable, as provided for by 12 N.Y.C.R.R. Part 137 and Part 146, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

## EIGHTH CAUSE OF ACTION
### New York Labor Law – Failure to Pay Spread-of-Hours Pay
### (Brought on behalf of Plaintiffs and the NYLL Class)

316.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

317.    At times, Defendants have failed to pay Plaintiffs and the NYLL Class additional compensation of one hour's pay at the basic minimum hourly wage rate for each day that the length of the interval between the beginning and end of their workday – including working time plus time off for meals plus intervals off duty – was greater than 10 hours

318.    By Defendants' failure to pay Plaintiffs and the NYLL Class spread of hours pay, Defendant has violated the NYLL, Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

319.    Due to Defendants' violations of the NYLL, Plaintiffs and the NYLL Class are entitled to recover from Defendants their unpaid spread of hours wages, liquidated damages, reasonable attorneys' fees and costs, and pre-judgement and post-judgement interest.

## NINTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Accurate Wage Statements
### (Brought on behalf of Plaintiffs and the NYLL Class)

320.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

321.    Defendants failed to supply Plaintiffs and the NYLL Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any,

claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked per week, including overtime hours worked if applicable; deductions; and net wages.

322.    Due to Defendant's violations of NYLL § 195(3), Plaintiffs and the NYLL Class are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars each, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198.

**TENTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Time of Hire Wage Notice**
**(Brought on behalf of Plaintiffs and the NYLL Class)**

323.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

324.    Defendants have failed to supply Plaintiffs and the NYLL Class with proper time of hire wage notices, as required by NYLL, Article 6, § 195(1), in English or in the language identified as their primary language, at the time of hiring and at subsequent wage changes, containing, among other items: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; overtime rate; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

325.    Upon information and belief, Defendants failed to provide any wage notices provided to Plaintiff and similarly situated Fast Food Workers.

326.    As a result, Plaintiff and Fast Food Workers were un-informed about the correct wages they were supposed to earn, and thus they were deprived of the information necessary for reviewing their wages, which was a direct cause for their economic injury, and in fact, resulted in their wages being underpaid.

327.    Due to Defendants' violations of NYLL, Article 6, § 195(1), Plaintiff and the NYLL Class are entitled to statutory penalties of fifty dollars for each workday that Defendants failed to provide them with wage notices, or a total of five thousand dollars each, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-b).

### ELEVENTH CAUSE OF ACTION
**Fair Workweek Law**
**Failure to Provide Written Good Faith Estimates**
**(Brought on behalf of Plaintiffs and the FWWL Class)**

328.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

329.    Prior to July 4, 2021, Defendants were required to provide each new employee with a written good faith estimate no later than when a new employee receives his or her first work schedule. N.Y.C. Admin. Code § 20-1221(a).

330.    As of July 4 Defendants are required to provide each new employee with a regular schedule no later than when a new employee receives his or her first work schedule. N.Y.C. Admin. Code § 20-1221(a).

331.    Defendants are also required to maintain records of the good faith estimates and regular schedules it provides to employees. N.Y.C. Admin. Code § 20-1206(a); 6 R.C.N.Y. § 7-609(a)(2)(i). A failure to maintain, retain, or produce a required record that is relevant to a material fact creates a rebuttable presumption that such fact is true. N.Y.C. Admin. Code § 20-1206(b).

332.    Defendants may not reduce the total hours in a fast food employee's regular

schedule by more than 15% from the highest total hours contained in such employee's regular schedule at any time within the previous 12 months, unless the employee has previously consented to or requested such reduction in writing, without just cause or a legitimate business reason. N.Y.C. Admin. Code § 20-1221(a).

333.    Defendants committed a violation of § 20-1221(a) of the Fair Workweek Law each time it failed to provide a written good faith estimate to any hourly employee hired to work in any New York City store.

334.    Defendants also committed a violation of § 20-1221(a) of the Fair Workweek Law each time it reduced an employees' regular schedule by more than 15% from the highest total hours as described herein.

335.    Due to Defendants' violations of the Fair Workweek Law, § 20-1221(a). Plaintiffs and the FWWL lass have been deprived of a predictable work schedule and are entitled to recover from Defendants compensatory damages and any other relief required to make the employees whole, and reasonable attorneys' fees and costs.

**TWELFTH CAUSE OF ACTION**
**Fair Workweek Law**
**Failure to Provide Advance Notice of Work Schedules**
**(Brought on behalf of Plaintiffs and the FWWL Class)**

336.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

337.    Defendants are required to provide employees with written notice of their work schedules at least 14 days before the first day of each schedule. N.Y.C. Admin. Code § 20-1221(b).

338.    Defendants are also required to maintain records of each written schedule provided to each employee. N.Y.C. Admin. Code § 20-1206(a); 6 R.C.N.Y. § 7-609(a)(1)(iii). A failure to maintain, retain, or produce a required record that is relevant to a material fact creates a rebuttable

presumption that such fact is true. N.Y.C. Admin. Code § 20-1206(b).

339.    Defendants committed a violation of § 20-1221(b) of the Fair Workweek Law each week it failed to provide each employee with that employee's written work schedule 14 days in advance.

340.    Due to Defendants' violations of the Fair Workweek Law, § 20-1221(b-c), Plaintiffs and the FWWL Class have been deprived of a predictable work schedule and are entitled to recover from Defendants compensatory damages and any other relief required to make the employees whole, and reasonable attorneys' fees and costs.

## THIRTEENTH CAUSE OF ACTION
### Fair Workweek Law
### Failure to Obtain Written Consent for Additional Hours
### (Brought on behalf of Plaintiffs and the FWWL Class)

341.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

342.    Defendants are required to obtain written consent from fast food employees who work additional hours that are not included in their initial work schedules. N.Y.C. Admin. Code § 20- 1221(d).

343.    Defendants are required to maintain records that show fast food employees' advance written consent to any schedule changes in which hours are added to the fast food employee's initial work schedule. N.Y.C. Admin. Code § 20-1206(a); 6 R.C.N.Y. § 7-609(a)(1)(ii). A failure to maintain, retain, or produce a required record that is relevant to a material fact creates a rebuttable presumption that such fact is true. N.Y.C. Admin. Code § 20-1206(b).

344.    Defendants committed a unique violation of § 20-1221(d) of the Fair Workweek Law each time it failed to obtain a fast food employee's advance written consent for hours added

to the initial work schedule.

345.    Due to Defendants' violations of the Fair Workweek Law, § 20-1221(d), Plaintiffs and the FWWL Class have been deprived of a predictable work schedule and are entitled to recover from Defendants compensatory damages and any other relief required to make the employee whole, and reasonable attorneys' fees and costs.

### FOURTEENTH CAUSE OF ACTION
**Fair Workweek Law**
**Failure to Provide Schedule Change Premiums**
**(Brought on behalf of Plaintiffs and the FWWL Class)**

346.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

347.    Defendants are required to provide employees with premium pay for changes it makes to employees' work schedules any time after the 14-day statutory schedule provision date. N.Y.C. Admin. Code § 20-1222(a).

348.    Defendants are required to maintain records that show each written work schedule provided to each employee, each employee's actual hours worked, and the amounts of premium pay provided to employees whose work schedules are changed by Defendants with less than 14 days' notice. N.Y.C. Admin. Code § 20-1206(a); 6 R.C.N.Y. §§ 7-609(a)(1) and 609(a)(2)(ii). A failure to maintain, retain, or produce a required record that is relevant to a material fact creates a rebuttable presumption that such fact is true. N.Y.C. Admin. Code § 20-1206(b).

349.    Defendants committed a unique violation of § 20-1222(a) of the Fair Workweek Law each time it failed to pay required schedule change premiums to fast food employees whose work schedules it changed with less than 14 days' notice.

350.    Due to Defendants' violations of the Fair Workweek Law, § 20-1222(a), Plaintiffs and the FWWL Class have been deprived of a predictable work schedule and are entitled to recover

from Defendants unpaid schedule change premiums, ranging from $10 to $75 for each violation, compensatory damages and any other relief required to make the employee whole, and reasonable attorneys' fees and costs.

### FIFTEENTH CAUSE OF ACTION
**Fair Workweek Law**
**Failure to Obtain Written Consent and Provide Premium Pay for Clopenings**
**(Brought on behalf of Plaintiffs and the FWWL Class)**

351.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

352.    Defendants are prohibited from requiring fast food employees to work clopenings, unless the employee provides written consent, and Defendants provides $100 in premium pay, to work the clopening. N.Y.C. Admin. Code § 20-1231.

353.    For clopenings, Defendants are required to maintain records showing that it obtained written consent from the employee, and records of premium pay that it provided to the employee. N.Y.C. Admin. Code § 20-1206(a); 6 R.C.N.Y. §§ 7-609(a)(1)(ii) and 609 (a)(2)(ii).

354.    A failure to maintain, retain, or produce a required record that is relevant to a material fact creates a rebuttable presumption that such fact is true. N.Y.C. Admin. Code § 20-1206(b).

355.    Defendants committed a violation of § 20-1231 of the Fair Workweek Law each time it failed to obtain written consent from an employee who worked a clopening.

356.    Defendants committed a violation of § 20-1231 of the Fair Workweek Law each time it failed to pay $100 in premium pay to an employee who worked a clopening.

357.    Due to Defendants' violations of the Fair Workweek Law, § 20-1231, Plaintiffs and the FWWL Class have been deprived of a predictable work schedule and are entitled to recover from Defendants unpaid premiums of $100 for each violation, compensatory damages and any other relief

required to make the employee whole, and reasonable attorneys' fees and costs.

## SIXTEENTH CAUSE OF ACTION
### Fair Workweek Law
### Failure to Offer Newly Available Shifts to Existing Employees
### (Brought on behalf of Plaintiffs and the FWWL Class)

358.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

359.    Defendants are required to notify its current employees about newly available shifts and offer them those shifts before hiring any new employees. N.Y.C. Admin. Code § 20- 1241.

360.    Defendants are required to maintain records that document its compliance with the Fair Workweek Law for three years. N.Y.C. Admin. Code § 20-1206(a). A failure to maintain, retain, or produce a required record that is relevant to a material fact creates a rebuttable presumption that such fact is true. N.Y.C. Admin. Code § 20-1206(b).

361.    Defendants committed a unique violation of § 20-1241 of the Fair Workweek Law each time it failed to offer a current employee the shifts it subsequently offered to a new hire in the same Taco Bell location.

362.    Due to Defendants' violations of the Fair Workweek Law, § 20-1231, Plaintiffs and the FWWL Class have been deprived of a predictable work schedule and are entitled to recover from Defendants compensatory damages and any other relief required to make the employee whole, and reasonable attorneys' fees and costs.

## SEVENTEENTH CAUSE OF ACTION
### Fair Workweek Law
### Failure to Provide Written Notice of Termination or Reduction of Hours
### (Brought on behalf of Plaintiffs and the FWWL Class)

363.    Plaintiffs reallege and incorporate by reference all allegations in all preceding

paragraphs.

364.    Defendants cannot fired or reduce the hours of Fast Food Workers without "just cause." N.Y.C. Admin. Code § 20-1272.

365.    In order to terminate, layoff, or reduce the hours of a Fast Food Worker, Defendant was and has been required to must provide a written explanation to that employee detailing the reasoning for such adverse employment action.

366.    Defendants committed a violation of § 20-1272 of the Fair Workweek Law each time it fired or reduced the hours of a Fast Food Worker without just cause.

367.    Defendants committed a violation of § 20-1272 of the Fair Workweek Law each time it failed to provided a written notice detailing the reasoning for termination or a reduction of hours for Fast Food Workers.

368.    Due to Defendants' violations of the Fair Workweek Law, § 20-1211(c), Plaintiffs and the FWWL Class have been deprived of a predictable work schedule and are entitled to recover from Defendants $500 per occurrence, payment of back pay for any loss of pay or benefits resulting from the wrongful discharge, and punitive damages. and any other relief required to make the employee whole, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually, and on behalf of all other similar persons, respectfully request that this Court grant the following relief:

A.    That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notices, to all Fast Food Workers who are presently, or have at any time between June 4, 2022 and up through and including the date of this Court's issuance of court-supervised notice, worked at the Defendants' Taco Bell locations. Such notice

shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.      Unpaid minimum wages and overtime compensation and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.      Designation of Plaintiffs as representative of the NYLL Class and the FWWL Class and counsel of record as Class Counsel;

E.      Unpaid minimum wages, agreed upon wages, overtime compensation, and other unpaid wages, and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

F.      Statutory penalties of fifty dollars for each workday that Defendants failed to provide Plaintiffs and the NYLL Class with proper annual wage notices, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

G.      Statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide Plaintiffs and the NYLL Class with accurate wage statements, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

H.      Unpaid schedule change premiums, unpaid clopening premiums, compensatory damages and any other relief required to make Fast Food Workers whole;

I.      Penalties, as provided by law;

J.      Pre-judgment and post-judgement interest, as provided by law; and

K.      Reasonable attorneys' fees and costs of the action; and

L.      Such other relief as this Court shall deem just and proper.


Dated:  New York, New York
        June 4, 2025


                                Respectfully submitted,


                                 */s/ Brian S. Schaffer*
                                Brian S. Schaffer

                                **FITAPELLI & SCHAFFER, LLP**
                                Brian S. Schaffer
                                Dana M. Cimera
                                28 Liberty Street, 30th Floor
                                New York, New York 10005
                                Telephone: (212) 300-0375

                                **BOUKLAS GAYLORD LLP**
                                Mark Gaylord
                                James Bouklas
                                357 Veterans Memorial Highway
                                Commack, New York 11725
                                Telephone: (516) 742-4949

                                *Attorneys for Plaintiffs and*
                                *the Putative Class and Collective*